IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH MITCHELL, | ) | CASE NO. 1:14 CV 1573 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.     Nature of the case and proceedings**

Before me[1] is an action by Deborah Mitchell under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying her applications

for disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 15. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 6.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument.

**B.      Background facts and decision of the Administrative Law Judge ("ALJ")**

Mitchell, who was 51 years old at the time of the hearing,[10] has a high school education and has taken university-level business classes.[11] She only recently moved from Texas to Cleveland with her youngest daughter to live with Mitchell's uncle.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that Mitchell had the following severe impairments: cervical degenerative disc disease with spondylosis, congenital stenosis, and radiculopathy, status post C5-C7 fusion; and major depressive disorder.[13]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Mitchell's residual functional capacity ("RFC"):

---

[6] ECF # 14.

[7] ECF # 19 (Mitchell's brief); ECF # 24 (Commissioner's brief).

[8] ECF # 19-1 (Mitchell's charts); ECF # 24-1 (Commissioner's charts).

[9] ECF # 18 (Mitchell's fact sheet).

[10] *Id.* at 1.

[11] Transcript ("Tr.") at 48.

[12] *Id.* at 20.

[13] *Id.* at 17.

> After careful consideration of the entire record, the undersigned finds that the claimant retains the residual functional capacity to perform a reduced range of light work with the following limitations (see generally 20 CFR 404.1567(b) and 416.967(b)). She cannot lift more than 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for approximately six hours in an eight-hour workday. She can sit for approximately six hours in an eight-hour workday. She can occasionally push and/or pull with the non-dominant left upper extremity. She should never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can frequently climb ramps or stairs. She can occasionally perform overhead reaching with the left upper extremity. She can perform frequent grasping and handling with the left upper extremity. She is limited to simple to moderately complex tasks with no fast-paced work, no strict production quotas, and minimal changes in the work setting. Further, she is limited to frequent contact with the public, coworkers, and supervisors.[14]

The ALJ decided that this residual functional capacity precluded Mitchell from performing her past relevant work as an insurance benefits clerk and a debt collector.[15]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Mitchell could perform.[16] The ALJ, therefore, found Mitchell not under a disability.[17]

---

[14] *Id.* at 23.

[15] *Id.* at 28.

[16] *Id.* at 29.

[17] *Id.* at 30.

## C.    Issues on judicial review and decision

Mitchell asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Mitchell presents the following issues for judicial review:

- The ALJ's residual functional capacity assessment finding Ms. Mitchell capable of performing a limited range of light work activity is unsupported by substantial evidence because the ALJ failed to give controlling weight to the opinion of Ms. Mitchell's treating physician, Dr. Hsai.

- The ALJ's residual functional capacity assessment is unsupported by substantial evidence because the ALJ failed to properly evaluate Ms. Mitchell's credible complaints of disabling pain.

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, the decision here must be reversed, with the matter remanded for further administrative proceedings.

## Analysis

## A.    Standards of review

### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by

this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.    *Treating physician rule and good reasons requirement***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27] In deciding if such

---

[21] 20 C.F.R. § 404.1527(d)(2).

[22] *Id.*

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[28]

In *Wilson v. Commissioner of Social Security*,[29] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[30] The court noted that the regulation expressly contains a "good reasons" requirement.[31] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[32]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[33] It drew a distinction between a

---

[28] *Id.* at 535.

[29] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[30] *Id.* at 544.

[31] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[32] *Id.* at 546.

[33] *Id.*

-7-

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[34] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[35] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[36]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[37] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[38] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[39] *Blakley v. Commissioner of Social Security*,[40] and *Hensley v. Astrue*.[41]

---

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[38] *Id.* at 375-76.

[39] *Rogers*, 486 F.3d at 242.

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[42] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[43] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[44] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[45]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[46] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[47] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary

---

[42] *Gayheart*, 710 F.3d at 376.

[43] *Id.*

[44] *Id.*

[45] *Rogers*, 486 F.3d at 242.

[46] *Gayheart*, 710 F.3d at 376.

[47] *Id.*

criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[48] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[49] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[50]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[51]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[52] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[53] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Rogers*, 486 F.3d 234 at 242.

[53] *Blakley*, 581 F.3d at 406-07.

physician disagrees with the opinion of a non-treating physician[54] or that objective medical evidence does not support that opinion.[55]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[56] The Commissioner's *post hoc* arguments on judicial review are immaterial.[57]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[54] *Hensley*, 573 F.3d at 266-67.

[55] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[56] *Blakley*, 581 F.3d at 407.

[57] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

- the failure to mention and consider the opinion of a treating source,[58]

- the rejection or discounting of the weight of a treating source without assigning weight,[59]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[60]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[61]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[62] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[63]

The Sixth Circuit in *Blakley*[64] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[65] Specifically, *Blakley* concluded that "even if we were to agree

---

[58] *Blakley*, 581 F.3d at 407-08.

[59] *Id.* at 408.

[60] *Id.*

[61] *Id.* at 409.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend*, 375 F. App'x at 551-52.

[64] *Blakley*, 581 F.3d 399.

[65] *Id.* at 409-10.

-12-

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[66]

In *Cole v. Astrue*,[67] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[68]

## B.    Application of standards

This case presents yet another challenge to the reasoning given for discounting the opinion of a treating physician. For the reasons set out below, I will find that the ALJ's reasons are not "good reasons" as that term is understood in the relevant case authority and so the matter must be remanded. Because this decision alone compels a remand, I will not here address Mitchell's other basis for judicial review – the ALJ's assessment of her credibility as to pain – but note that this issue may be considered afresh on remand.

Before reviewing the details of how the physician in this instance dealt with the claimant, the foundational question of whether this physician was a treating source must be addressed.

---

[66] *Id.* at 410.

[67] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[68] *Id.* at 940.

As I recently discussed in *Montanez v. Commissioner of Social Security*:[69]

> The regulations define a treating source as "an acceptable medical source" who provides the claimant with treatment or evaluations and who has or had "an ongoing treatment relationship" with the claimant.[FN79] The regulations further state an ongoing treatment is demonstrated when the "medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition."[FN80] The regulation itself further precludes finding that an ongoing treating relationship can be created by a claimant seeing the source "solely on your need to obtain a report in support of your claim for disability."[FN81]

> > [FN79] 20 C.F.R. §§ 416.902, 404.1502.
> > [FN80] *Id.* at § 404.1502
> > [FN81] *Id.*

> But beyond that, the regulations, as noted, look to the accepted medical practice for the type of treatment involved or the type of evaluation sought as these pertain to the claimant's medical condition as the means for determining whether the contact between a claimant and the medical source is sufficient to make that source a treating source....

> [In sum], the Ninth Circuit has stated that the regulations defining a treating source "neither explicitly forbid[] or require" assigning that status to a physician who actually sees the claimant "a few times" or "as little as twice a year." Rather, as the text of the regulation itself explicitly states, the test is whether the source has seen the claimant with the frequency medically required by the treatment or evaluation at issue in the context of the claimant's impairment. Thus, merely taking note of the number of visits by itself is not enough to show either that the contacts are sufficient to establish a treating relationship or that conclusively they are not.[70]

---

[69] *Montanez v. Comm'r of Soc. Sec.*, No. 1:13 CV 614, 2013 WL 6903764 (N.D. Ohio Dec. 31, 2013) (report and recommendation adopted by the district court).

[70] *Id.*, at *8.

-14-

Although the precise words of the regulations make clear that a determination of whether a source is a "treating source" may not be reduced to simply calculating the number of visits the claimant made to the source, courts have suggested some guidelines in that regard. First, the Supreme Court in *Black & Decker Disability Plan v. Nord* [71] observed in general terms that "the assumption that the opinion of a treating physician warrants greater credit than the opinions of [other sources] may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration."[72] The Sixth Circuit in *Helm v. Commissioner of Social Security*[73] also expressed a similar observation in a slightly different context when it noted that "it is questionable whether a physician who examines a patient only three times over a four-month period is a treating source – as opposed to a non-treating but examining source."[74] In a somewhat more definitive statement, the Sixth Circuit in *Yamin v. Commissioner of Social Security*[75] found that a doctor who examined the claimant on only two occasions did not have a long-term overview of the claimant's condition and so was not a treating source.[76]

---

[71] *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

[72] *Id.* at 832.

[73] *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997 (6th Cir. 2011).

[74] *Id.* at 1000 n.3.

[75] *Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883 (6th Cir. 2003).

[76] *Id.*

-15-

Here, Augusto Hsai, M.D., is a physician specializing in the cervical spine who examined and treated Mitchell four times over six months in 2013 before offering a medical opinion as to her functional limitations.[77] As such, Dr. Hsai saw Mitchell more often than the two or three visits that have been seen as just below the acceptable limit for a treating source, and at least one other district court has found a pain management specialist to be a treating source after four visits with the claimant.[78]

In sum, the evidence is that Dr. Hsai is a treating source and thus his opinion should be evaluated as such.

That said, I turn to consider Dr. Hsai's opinion itself. That opinion states that because Mitchell experiences daily neck and arm pain, and daily hand weakness and daily lower back pain, she would be capable of sitting only four hours a day, standing for only 30 minutes per day, and would require a 15-minute break every hour, and would be expected to be absent from work 2 to 4 times a month.[79]

The ALJ initially discusses Dr. Hsai in the section of his opinion describing Mitchell's medical history. There, the ALJ introduces Dr. Hsai with the comment that Mitchell went to

[77] Tr. at 399-402, 407-409, 427-429, 432-434, 456-457.

[78] *See*, *e.g.*, *West v. Comm'r of Soc. Sec.*, No. 1:14-CV-00672, 2015 WL 691313, at * 7 (N.D. Ohio Feb. 18, 2015) (Gwin, J. adopting the report and recommendation of Knepp, M.J.) (physician who saw claimant once and other physician who saw claimant three times were not treating sources); *see also*, *Trimm v. Colvin*, No. 7:13-CV-00961 MAD, 2015 WL 1400516, at * 8 (N.D.N.Y. Mar. 26, 2015) (four visits to a pain management specialist over 15 months supported viewing source as a treating source, but also factored into decision to accord the source opinion no weight).

[79] Tr. at 456-57.

see him – a "spine specialist" – for "another opinion regarding her pain symptoms."[80] While this comment of itself may possibly be understood as describing a one-time consultative examination, and, as noted, the ALJ makes no reference to Dr. Hsai as a treating source, the facts as set forth above clearly show that Dr. Hsai is both a treating physician and a specialist in the area for which he treated Mitchell. In addition, also set forth above, Dr. Hsai was not simply a "second opinion" on the question of pain, but was the last physician Mitchell saw – a final effort to find relief from pain that had resisted prior attempts to manage.

The ALJ's failure to recognize Dr. Hsai as a treating source is consequential. Although the current judicial understanding of *Gayheart* permits ALJs considerable leeway in how rigorously they adhere to the analytical path outlined in the regulations and highlighted in the *Gayheart* decision,[81] the ALJ's failure in this case to explicitly recognized Dr. Hsai as a treating source, and the related failure to include a discussion of his specialty in the weight analysis, where *Gayheart* places it in matters where the treating source opinion

---

[80] *Id.* at 20.

[81] The Commissioner extensively cites to these opinions. ECF # 24 at 13-14 (citing cases).

is to be given less than controlling weight, both greatly diminish the thoroughness and persuasiveness of the ALJ's ultimate reasoning as to the weight given to Dr. Hsai's opinion.[82]

In the analysis of why Dr. Hsai's functional opinion was given only "little weight," the ALJ began his analysis with the comment that Dr. Hsai's opinion was inconsistent with "his" – *i.e.*, Dr. Hsai's – "objective findings," and inconsistent with Dr. Hsai's conservative treatment recommendations over the course of his six-month treatment history with Mitchell.[83] Further, the ALJ found Dr. Hsai's opinion inconsistent with Mitchell's own "limited" use of prescribed treatment for pain.[84]

I begin now with a brief review of Dr. Hsai's treatment notes. After his initial examination, where Dr. Hsai diagnosed Mitchell as having "cervical post laminectomy syndrome and myofacial pain," his subsequent treatment notes all present his consistent

---

[82] The Commissioner in his brief notes that the ALJ identified the fact that Dr. Hsai's treatment relationship with Mitchell was only six months – which the Commissioner argues makes it less strong than other, longer relationships. ECF # 24 at 15. While the length of the treating relationship, as noted above, is a component of the weight analysis, it must also be noted that the ALJ made no mention of Dr. Hsai's status as a specialist, which is also one of the weight analysis factors, nor of the fact that he was seen as a final option after many other treatment options had been tried. Thus, in this case whether the length of the relationship is a good reason for reducing the weight given to Dr. Hsai's opinion has to be reviewed in the particular context of whether that time was sufficient for a treating relationship to be established between the claimant and a specialist working in his area of expertise. No such analysis was done by the ALJ here.

[83] *Id.* at 27.

[84] *Id.*

finding that Mitchell has decreased mobility in the cervical spine,[85] as well as decreased strength and pain in her left arm.[86] As Mitchell observes,[87] these notes show that Dr. Hsai was aware of significant reasons for Mitchell to be in pain, understood that Mitchell's prior surgery was unsuccessful in that regard, and was attempting to find something that had not been tried before that would work.

Mitchell also notes, and the record supports, that she has undergone treatment for her pain that is not conservative, such as the diskectomy and spinal fusion that relieved the pain for only a short time, and Dr. Hsai was addressing a situation where the more aggressive pain therapies had already been tried, but were less than successful.[88] To suggest, as a reason for discounting Dr. Hsai's functional opinion, that Dr. Hsai's treatments were conservative because Mitchell's pain was less than serious and so at variance with the functional opinion, ignores the reality, plainly present in the record, that Dr. Hsai could not recommend more aggressive treatments because they had already been tried without significant success.[89]

---

[85] *Id.* at 407-09 ("decreased range of motion in the cervical spine" - notes of June 19, 2013); 427-29 ("decreased range of motion in the cervical spine" – notes of July 17, 2013); 432-34 ("decreased range of motion in the cervical spine" – notes of August 15, 2013).

[86] *Id.* at 407-09 (June 19, 2013 notes are that Mitchell reported increased tingling in her arm); 427-429 (July 17, 2013 exam found decreased reflexes in the bilateral biceps, bilateral elbow tenderness in the left biceps); 432-34 (August 15, 2013 examination found decreased bilateral biceps, decreased strength in left bicep).

[87] ECF # 19 at 14.

[88] *Id.*

[89] I note that the record shows that Mitchell actually wanted additional surgery. Tr. at 25. The doctors, however, did not recommend that course. *Id.*

-19-

Moreover, the ALJ's second reason for discounting Dr. Hsai's opinion – that is was inconsistent with Mitchell's own record of being irregular in her use of prescribed treatments for pain – is also not a "good reason." First, as noted earlier, Mitchell is on record as wanting more aggressive therapies, such as additional surgery, but her wishes in that regard were overruled by her physicians.[90] This desire for additional surgery is not consistent with the picture presented by the ALJ of a person whose pain is not really that severe, and so regularly neglects prescribed treatments.

Next, and more importantly, these alleged inconsistencies all occurred prior to Dr. Hsai's involvement in Mitchell's treatment. Even if Mitchell had previous episodes before she saw Dr. Hsai where she was irregular in her use of pain medications or other treatments, it is fully consistent with prolonged, consistent pain that what was once tolerable later becomes intolerable. Further, while it cannot be said that all observations in the record prior to Dr. Hsai's opinion have no relevance to the weight given to his opinion, it must also be said that any weight analysis that relies on Mitchell's past use of previous pain therapies must plainly take into account that these therapies were ultimately not successful or even counterproductive[91] and that Dr. Hsai was fully aware of those prior failures. The reasoning of the ALJ in this instance does not set forth a good reason for rejecting the opinion of a treating source.

_____

[90] *Id.* at 27.

[91] *See*, *id.* at 407. Mitchell told Dr. Hsai that she had discontinued using Neurontin due to increased tingling in her arm.

Accordingly, for the reasons stated above, I find that the reasons given by the ALJ for according less than controlling weight to Dr. Hsai's opinion are not "good reasons." Thus, the decision of the Commissioner in this case is not supported by substantial evidence, and so the matter must be remanded.

Moreover, as noted earlier, although this holding is sufficient to warrant the remand, and so does not require any discussion here of the issue of Mitchell's credibility, the issue of credibility remains to be considered on remand, if necessary.

## Conclusion

For the reasons stated, substantial evidence does not support the finding of the Commissioner that Mitchell had no disability. The denial of Mitchell's applications is, therefore, reversed and the matter remanded for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: May 29, 2015                         s/ William H. Baughman, Jr.
                                            United States Magistrate Judge

-21-